In the Matter of Proving the Will of Mary A. Fordham, Deceased.

George H. Corey, Individually and as Executor, et al., Appellants; James A. Warren et al., Respondents.

Will — gift of remainder not generally defeated by death of life tenant before will takes effect — direction by testatrix that property then remaining at death of life tenant pass to heirs and next of kin · of her husband — where named life tenant and husband both predecease testatrix residuary estate passes at her death to heirs and next of kin of her husband then living — the word "then" defines a point of time not earlier than death of testatrix.

1. An ulterior limitation " upon " the death of another who is given an estate for life, will not, in general, be defeated by the lapse of the particular estate through the death of the life tenant before the will can take effect. This is so though the language of the gift, if literally construed, may make the remainder contingent upon succession in the order named.

2. Where testatrix by her will erected a trust for the benefit of her stepson, with authority to use both income and principal and directed that upon his death the personal property then remaining be distributed among the next of kin and the real estate then remaining descend to the heirs at law of her husband, and the stepson and husband

both predecease her, the heirs and next of kin of the husband in being at the death of testatrix become the owners and entitled to the possession of the residuary estate.

3. " Upon the death " of the stepson meant upon the termination of the life estate bequeathed to him. If he died during the lifetime of testatrix the remainders would be accelerated; they would not be destroyed. The word " then " like the word " upon " is used consistently throughout the will. It marks the termination of the estate for life, and, if the life estate shall lapse, the death of the maker of the will.

*Matter of Corey (Fordham)*, 204 App. Div. 878, reversed.

(Argued February 26, 1923; decided April 17, 1923.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 15, 1922, which affirmed a decree of the Kings County Surrogate's Court construing the will of Mary A. Fordham, deceased.

*Henry Wynans Jessup, Henry H. Man* and *George H Corey* for appellants. The intent of the testatrix that the heirs and next of kin of her husband were ultimately to have her estate clearly appears from a reading of the will without resorting to any surrounding circumstances or other aid to construction. (*McLean* v. *Freeman,* 70 N. Y. 81; *Matter of Miller,* 161 N. Y. 71; *Corbyn* v. *French,* 4 Ves. 418.) The words " at that time " do not designate an earlier date than the death of the testatrix herself. (*Hang* v. *Schumacher,* 166 N. Y. 506.) The death of Allan only accelerated the remainder interest to take effect in ownership upon the testatrix's death and subject to payment of her debts, etc. ( *U. S. Trust Co.* v. *Hogancamp,* 191 N. Y. 281; *Gilliam* v. *Guaranty Trust Co.,* 186 N. Y. 127; *Paget* v. *Melcher,* 49 N. Y. Supp. 924; *Matter of Miller,* 161 N. Y. 73; *Williams* v. *Jones,* 166 N. Y. 522.)

*William J. Smith* for respondents. The intention of testatrix, clearly stated in her will, must be the rule of construction. (*Matter of King,* 200 N. Y. 189; *Robinson*

v. *Martin,* 200 N. Y. 159; *Rasquin* v. *Hamersley,* 152
App. Div. 522; *Matter of Kimberly,* 150 N. Y. 90;
*Gilliam* v. *Guaranty Trust Co.,* 186 N. Y. 127.)

Cardozo, J. Mary A. Fordham left a will which is
before us for construction. She gave her residuary estate
to her husband, Caleb S. Fordham, if he survived her.
In the event of his death before her, she gave the estate
to a trustee with directions to pay the income to her step-
son, Allan McC. Fordham, the child of Caleb S. Ford-
ham by an earlier marriage, and with discretionary power
to use the principal if the income seemed to be inadequate.
She then made provision as follows:

"*Sixth.* Upon the death of the said Allan McC. Ford-
ham I give, devise and bequeath all the rest, residue and
remainder of my Estate both real and personal which
shall remain after the provisions and directions contained
in the preceding or fifth paragraph of this my Will shall
have been duly carried out and performed, to the heirs
at law and next of kin of my said husband Caleb S. Ford-
ham, the personal property then remaining to be distrib-
uted among said next of kin and the real estate then
remaining to descend to said heirs at law precisely as
said personal property would be distributed, and said
real estate would descend, if the same then belonged to
my said husband Caleb S. Fordham and he at that time
departed this life intestate."

The will is dated February 24, 1900. The testatrix
died February 3, 1922. Neither her stepson nor her hus-
band survived her. The stepson died in November, 1900.
The husband died in April, 1921. At the death of the
wife, heirs and next of kin of the husband were in being.
They were not, however, the same persons who would
have been his heirs and next of kin if he had died in
November, 1900, at the same time as his son Allan. At
that time his heirs and next of kin would have been two
sisters, Mrs. Watkins, who died in 1903, and Mrs. Corey,

who died in 1911. If the death of Allan, though occurring before the death of the testatrix, with the result that the trust for his life never took effect, is none the less the point of time to which we must refer in fixing the class of heirs and next of kin, the gift has lapsed, and the estate will be distributed as if the testatrix had died intestate. We shall thus give the property to her own heirs and next of kin, though her dominant purpose, clearly revealed, was to give it to her husband's. On the other hand, if the direction to ascertain the class according to the situation existing at the death of Allan is merely a direction to ascertain it at the termination of the life estate, the death of the life beneficiary before the will takes effect will not be productive of a lapse, but will transfer the ascertainment of the class to the death of the testatrix. The courts below have held that there was a lapse with consequent intestacy. We hold another view.

An ulterior limitation " upon " the death of another who is given an estate for life, will not, in general, be defeated by the lapse of the particular estate through the death of the life tenant before the will can take effect. This is so though the language of the gift, if literally construed, may make the remainder contingent upon succession in the order named ( *U. S. Trust Co.* v. *Hogencamp,* 191 N. Y. 281; *Williams* v. *Jones,* 166 N. Y. 522, 536; *Norris* v. *Beyea,* 13 N. Y. 273, 287; 2 Jarman on Wills [6th English ed.], p. 1373). The gift before us is to be read in submission to that rule. When the testatrix said that " upon " the death of Allan, the residuary estate was to go to the members of a class, she certainly did not mean that it was to go to them " upon " his death, if his death occurred before her own. She understood that her will would take effect when she died, and not before. " Upon the death of Allan " meant, therefore, upon the termination of the life estate bequeathed to Allan. If he died during her lifetime, the remainders would be accelerated; they would not be destroyed. For this, the

authorities are uniform and ample ( *U. S. Trust Co.* v. *Hogencamp, supra; Williams* v. *Jones, supra; Norris* v. *Beyea, supra; Wager* v. *Wager,* 96 N. Y. 164).

The argument is made, however, that later words in the same gift restrict the members of the class to those in being when Allan died whether after the testatrix or before her. The estate is given, we are reminded, to those who would " then " be the heirs and next of kin of Caleb. We think the argument must fail. If the words, " I give, devise and bequeath upon the death of Allan," mean upon the termination of the life estate, the word " then " must have the same construction as " upon." This conclusion is confirmed when the will is analyzed more closely. We must remember that the testatrix in creating a trust for the benefit of Allan, had authorized the use of principal as well as income. For this reason, in disposing of the estate upon his death, she gives the personal property " then " remaining to the next of kin and the real estate " then " remaining to the heirs. The residue of the estate is defined as what is left " after the provisions and directions " contained in the preceding or fifth subdivision, " have been fully carried out and performed," and all " then " remaining is covered by the gift. But certainly when she used the word " then " as defining the residue existing after the carrying out of the prior gift, she cannot have regarded it as defining a point of time prior to her own death, for she knew that before her own death the prior gift was ineffective. The word " then " must, therefore, define a point of time not earlier in any event than the death of the testatrix. She creates a trust for life with power to consume the principal. All the property " then " left, after this direction is obeyed, is to go to the heirs and next of kin of her deceased husband as if he had " then " died. One point of time and one only is in her mind whether she is describing the subject-matter of the gift or the class that will enjoy it. She is not departing from the

maxim that no one is heir to the living (*Doctor* v. *Hughes,* 225 N. Y. 305, 313), and establishing for her husband a class of heirs who may die before their ancestor. The word " then " like the word " upon " is used consistently throughout. It marks the termination of the estate for life, and, if the life estate shall lapse, the death of the maker of the will.

Courts do not approach these problems in a spirit of rigid literalism. If they did, every testamentary gift of a remainder " upon " the death of a tenant for life, would make succession in the stated order, not merely an expected event, but an indispensable condition. Undoubtedly, this testatrix hoped and believed that the trust for life would take effect before the gift of the remainder. That is why she spoke of the heirs and next of kin " then " living. If the trust became effective, she wished the class to be determined according to the situation existing when the life estate should end. We find no basis for the belief that she did not wish it to be determined at all if the life estate should fail. The imputation of such a purpose is forbidden whether the will be subjected to the tests of probable intention, to be gathered from its scheme and framework, or to those of verbal criticism.

Our conclusion, therefore, is that the heirs and next of of kin of Caleb S. Fordham in being at the death of the testatrix are the owners, and entitled to the possession, of the residuary estate.

The order of the Appellate Division and the decree of the Surrogate's Court should be reversed, with costs in all courts payable out of the estate, and the proceeding remitted to the Surrogate's Court for the entry of a decree in accordance with this opinion.

HOGAN, POUND and ANDREWS, JJ., concur; HISCOCK, Ch. J., and CRANE, J., dissent; McLAUGHLIN, J., absent.

Ordered accordingly.