In the Matter of the Construction of the Will of ABRAHAM S. ROSENTHAL, Deceased. JEAN L. TANBURN, Respondent; RHEA S. HOFFHEIMER et al., as Trustees under the Will of ABRAHAM S. ROSENTHAL, Deceased, et al., Appellants.

Argued May 20, 1954; decided July 14, 1954.

*Francis S. Bensel, Albert B. Maginnes, Leonard A. Blue* and *Robert Ehrenbard* for Rhea S. Hoffheimer and others, appellants.

*Nathaniel L. Goldstein, Attorney-General (Henry S. Manley* and *Wendell P. Brown* of counsel), appellant in person.

*Leo H. Hirsch, Jr.,* appellant in person, and for Samuel R. Feller, appellant.

*Joseph M. Proskauer, Jack M. Ginsberg, J. Alvin Van Bergh, Charles Looker, Norma Hack* and *Philip J. Hirsch* for respondent.

Order affirmed, with costs to all parties appearing separately and filing separate briefs payable out of the estate.

Concur: LEWIS, Ch. J., DESMOND, DYE and VAN VOORHIS, JJ. FULD, J., dissents in the following opinion in which CONWAY and FROESSEL, JJ., concur.

FULD, J. (dissenting). I cannot agree with the court's holding that the testator, Abraham S. Rosenthal, intended to except, from his prohibition against marriage with one not of the Jewish faith, a descendant of his who might be an appointee under the power of appointment given to his grandson, Stephen Tanburn.

We gather a testator's intent, not by isolating or pinpointing a single word, or even several words, but by a sympathetic reading of his entire will, by taking words in context and by seeking to understand what he had in mind and what he hoped to accomplish. Examined in that spirit, the will reveals a man who held exceedingly strong views against intermarriage and who made it exceedingly plain that he did not want any " child " or " descendant " of his who married a person " not born in the Jewish faith " to share in, or benefit from, his estate in any way.

Thus, in Article Twelfth, Rosenthal declared that
> " *all* legacies and devises and *all* powers of appointment * * * [under his last will], given, devised and bequeathed to any child of mine or to any descendant of mine, are given, devised and bequeathed subject to the following express conditions ".

Proceeding, then, to specify the " condition," he provided that, if any " child or descendant " marries " a person * * * not born in the Jewish faith * * * and * * * not * * * of Jewish " blood,
> "' *all legacies and devises* * * * *and all powers of appointment* * * * to such child or descendant * * * shall be cancelled, annulled and revoked ".

The testator then turned to (1) any husband or wife, not of the Jewish faith, who married a Rosenthal descendant, and (2) all Rosenthal descendants who themselves departed from the Jewish faith. Thus, he provided that any such spouse or descendant
> " shall not be entitled to take any share or interest * * * of my estate either as legatee, devisee, *appointee,* heir at law or next of kin, distributee or otherwise ".

The testator gave his grandson, Stephen Tanburn, a power to appoint by will the principal of a trust, as well as its income. Stephen died in 1952 leaving a will in which he appointed his daughter Jean, petitioner herein, as a beneficiary of both the principal and income.

The question presented is, of course, whether the gift to petitioner is a " legacy " and " devise " within the meaning of Article Twelfth, and to me an affirmative answer seems compelled.

The testator's manifest desire was that no descendant of his should share in his estate if he or she married out of the Jewish faith. That was his concern, and he did not think in terms of legacies or devises, of powers of appointment or appointees. He was intent only upon making certain that no descendant who married a non-Jew would take any property of his. According to Article Twelfth, " all legacies and devises " to descendants who married non-Jews were to be cancelled and revoked. Certainly, petitioner's interest was encompassed by those terms.

In Article Eighth, section I, subdivision (5), for instance, in disposing of the very interest appointed to petitioner, the testator expressly declared that

" I hereby give, devise and bequeath "

the principal of the trust to such persons as his grandson Stephen " may appoint." And, even if the words employed had not so plainly indicated the testator's intention that appointed property be treated as a *legacy* or a *devise,* that would have been the conclusion dictated by settled principles. (See, e.g., *Farmers' Loan & Trust Co.* v. *Mortimer,* 219 N. Y. 290, 295; *Farmers' Loan & Trust Co.* v. *Kip,* 192 N. Y. 266; *Matter of Harbeck,* 161 N. Y. 211, 218; *Fargo* v. *Squiers,* 154 N. Y. 250; *Maitland* v. *Baldwin,* 70 Hun 267, 270; *Matter of Walbridge,* 178 Misc. 32.)

To support a contrary result, emphasis is placed upon the omission of the word " appointee " following the words " all legacies and devises  *  *  *  and all powers of appointments " in the clause quoted above. Respondents have built their argument almost entirely upon the circumstance that, in treating his descendants, the testator provided that " all legacies and devises  *  *  *  and all powers of appointment " made to those who marry out of the Jewish faith be cancelled and revoked, while, in dealing with a non-Jewish spouse of a descendant, or a non-Jewish Rosenthal descendant, he provided that such a spouse or descendant shall not be entitled to any share of his estate either as " legatee, devisee, appointee " or " distributee ". The absence of the word " appointee " from the first clause, its presence in the second, are stressed and are said to indicate that the testator intended to narrow the usual meaning of the words " all legacies and devises ".

I cannot accept that analysis. The contention overlooks the reason for the use of the term " powers of appointment " along with " legacies and devises," as well as for the absence of the word " appointee ". The draftsman of the will was just being precise. The first clause — describing the result if the inhibited act of intermarriage occurred — *is framed in terms of grant,* in terms of the interest to be enjoyed, namely, " legacy ", " devise ", " power of appointment " — and, by use of such verbiage, included every character of testamentary grant or interest. The second clause, on the other hand, *is framed in terms of persons to take,* namely, " legatee," " devisee," " appointee," " next of kin," " distributee ". It would have

been imprecise and incorrect to add " appointee " to or after the words " legacy " and " devise ". In other words, a " legacy " or " devise " is an interest in property, an " appointee " is a person — each a different classification which a careful draftsman would never couple together or treat alike. There is, therefore, no warrant for attaching any significance whatsoever to the absence of the term " appointee " in the first clause. In short, then, while petitioner is an " appointee," the gift which she received is a " legacy " or a " devise " under the testator's will. Consequently, the words " all legacies and devises " include the interest appointed to petitioner by the donee of the power.

Nor is it reasonable to suppose that the testator could possibly have intended to exclude *one single special category of descendants* — an appointee under a power of appointment — from all who were to be subject to the inhibition against intermarriage and permit — from out of the many groups of descendants — one group, perhaps only one individual, to share in his estate. The sweeping strictures and prohibitions of the will are pointed up by this partial list of conceded exclusions:

1. No child or descendant who marries out of the Jewish faith could take any " legacy " or " devise " under the will.

2. No descendant who was not born in the Jewish faith could take anything under the will.

3. No one could take by appointment from his grandson, Stephen Tanburn, if *he* married out of the Jewish faith — for the testator cancelled the " power of appointment " given him on the happening of that condition.

4. No child or descendant, including petitioner, could take anything under the will in default of appointment if *she* married out of the Jewish faith.

5. Neither petitioner's descendants nor her husband could take anything, either by appointment or by default of appointment, if *she* married out of the Jewish faith.

6. Petitioner could not take under Article Seventh (d) or Article Eighth II if *she* married out of the Jewish faith.

7. No husband or wife, not born in the Jewish faith, of any child or descendant could take anything under the will.

Under such circumstances, how may it be said in fairness to the testator that he intended that this petitioner could, by the

device of an appointment, take a part of his estate if she married a person not a Jew. The creation of so narrow an exception does not fit in with the testator's general overriding intent to prevent intermarriage among his descendants.

It is suggested that the testator had great confidence in his grandson Stephen, the donee of the power, and that it might for that reason be inferred that he did not intend to extend " the ban of his displeasure to the appointees of his grandson " (283 App. Div. 316, 322). The argument seems to me less than persuasive. Apart from other considerations, it is to be noted that the testator explicitly provided, in Article Twelfth, that Stephen's power of appointment was to come to an end if *he* married out of the Jewish faith. And, beyond that, he was disqualified from appointing to petitioner's children, his own grandchildren, or his son-in-law if *petitioner* married out of the Jewish faith. Quite obviously, the supposed confidence in Stephen was something less than complete, but, whatever its quantum, it furnishes no basis for deducing that the testator was willing to permit his grandson, by exercising a power of appointment, to defeat his intention that no descendant of his who married out of the Jewish faith should enjoy any part of his property.

The order of the Appellate Division should be modified to the extent of construing Article Twelfth of the will as applicable to the interest appointed to petitioner under the power granted by testator, and, as so modified, affirmed.

Order affirmed, etc.